WILLIAM DUKE, Respondent, v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, May 27, 1912.

1. NEGLIGENCE: Transfer Privileges: Ordinance. An ordinance requiring a street car company to furnish transfers that will enable passengers to go by a reasonably direct route to their destinations does not deprive the company of its right as a common carrier to make reasonable rules controlling the use of transfer privileges.

2. ————: Transfers: Duty of Passengers. It is the duty of a street railway to prescribe reasonable rules for the use of transfers and when passengers receive transfers they must inform themselves of the manner in which they can be used. If they make a mistake, not induced by the agents of the company, they have no remedy.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

REVERSED AND REMANDED.

*John H. Lucas* and *Charles N. Sadler* for appellant.

*Ellison A. Neel* and *A. P. Newell* for respondent.

JOHNSON, J.—This is a suit to recover actual and punitive damages for the alleged wrongful ejection of plaintiff from an electric street car operated by defendant. The jury decided the issues submitted to them in favor of plaintiff and in their verdict awarded him compensatory damages in the sum of $300. After the overruling of its motions for a new trial and in arrest of judgment defendant brought the case here by appeal.

Plaintiff, an old man, boarded a northbound car on defendant's Rosedale line at Thirteenth street and Southwest boulevard intending to travel to a point in Kansas City, Kansas. His destination was on another line of defendant's street railway system called the Fifth street line and it was necessary for him to transfer to a westbound Fifth street car in order to complete his journey. He paid the fare of five cents to the conductor of the Rosedale car and received a transfer check which, if properly used, entitled him to go to his destination without payment of another fare. The car on which he became a passenger turned into Wyndotte street and ran north on that street to and beyond Fifth street. At Twelfth street it crossed an east and west line operated by defendant and this crossing was one of defendant's transfer points. At Fifth street it crossed the Fifth street line and that crossing was a transfer point for passengers westbound on Fifth street to points in Kansas City, Kansas. If plaintiff had remained in the Rosedale car until he arrived at Fifth street he could have changed to a westbound Fifth street car at that place and proceeded to his destination without further change of cars. Instead of following this, the most direct route, he left the Rosedale car at Twelfth street and boarding an eastbound car on that street, rode two blocks to Main street. He handed his transfer check to the conductor of the Twelfth street car and told him, so he says, that he desired to use the check for trans-

portation on a Main street car. The conductor punched the check and returned it to plaintiff who left the car at Main street and boarded a Fifth street car at that place which was a regular transfer point. The conductor of the Fifth street car refused to accept the transfer check claiming it could not be used in the manner of its attempted use and demanded another fare. Plaintiff asked time to consider the demand and the conductor did not make a peremptory demand until the car had run about four blocks. Plaintiff did not pay the extra fare and the conductor seized him and forcibly ejected him from the car. The evidence of plaintiff tends to show that the conductor employed greater force and violence than that required by the resistance of plaintiff which was entirely passive, while the evidence of defendant tends to show that the conductor acted with moderation and accomplished the expulsion without physical injury to plaintiff.

Over the objection of defendant the court permitted plaintiff to introduce in evidence an ordinance of Kansas City which embodies what is popularly called the "Peace Agreement" between the city and the defendant railway company. This ordinance provides for universal transfers over all the street railway lines of defendant in Kansas City, Missouri, Kansas City, Kansas, Rosedale and Argentine, by which is meant that a passenger may ride from a point on any of defendant's lines to a point on any other line on payment of a single fare of five cents. The ordinance recites that it is "the intention of this contract that transfers shall be furnished that will enable a passenger to go by a reasonably direct route to his destination at any point on the company's lines for a single fare." It contains a provision to prevent a passenger from "making a loop" on a single fare but that provision is not material to our inquiry since it is obvious that plaintiff was not within the purview of

that restriction. A further provision of the ordinance is that "the city specially reserves to itself the right and power by reasonable ordinance to regulate the matter of transfers so as to carry out the spirit of this section." It is not shown that any ordinance was enacted regulating the matter of transfers from the Rosedale northbound cars to the Fifth street west-bound cars and there is nothing in the ordinance from which we have quoted that forbids defendant from prescribing reasonable rules governing the use of such transfers. The transfer check issued to plaintiff was not produced at the trial. There is evidence to the effect that rules of defendant regulatory of the use of transfer privileges were printed on the back of transfer checks and that such rules made the check held by plaintiff good for transportation over the Fifth street line where the passenger boarded a car of that line at the intersection of Fifth and Wyandotte streets. Defendant offered evidence to prove that its rules made that transfer point the only one at which passengers might transfer from the Rosedale to the Fifth street cars, but the court sustained plaintiff's objections to the evidence.

The two grounds on which plaintiff contends he is entitled to recover are, first, that he was a passenger on the Fifth street car and therefore, that his ejection therefrom was wrongful and, second, that if he were not a passenger, the unnecessary force and violence of the conductor in putting him off affords him a cause of action for the resultant injuries he sustained.

In the instructions given the jury at the request of plaintiff, as well as in his rulings on the evidence, the learned trial judge proceeded on the theory that the test of whether or not plaintiff was a passenger was not his compliance or non-compliance with a reasonable rule of defendant regulating the use of the transfer check, but depended on the solution of the

question, which was treated by the court as an issue of fact, or whether ''plaintiff was going by a reasonably direct route to his destination and was not making what is commonly called ''a loop.'' In other words the jury decided the case on the hypothesis given them by the court that as long as a passenger is traveling to his destination by a reasonably direct route he may select his own course and that in this case the jury were entitled to draw the conclusion from the evidence as one of fact that the course selected was reasonably direct.

We think this hypothesis unsound. The ''Peace Ordinance'' in requiring that ''transfers shall be furnished that will enable a passenger to go by a reasonably direct route to his destination'' did not attempt to deprive defendant of its right as a common carrier to make reasonable rules controlling the use of transfer privileges. It only endeavored to compel the carrier to prescribe reasonable and not arbitrary or oppressive rules. It was only declaratory of well-settled rules of substantive law which would compel defendant to perform its agreement to give transfers that could be used by passengers in a reasonably convenient and expeditious manner. Without this regulatory clause of the ordinance, still the law would not allow defendant to perform its agreement to give ''universal transfers'' in a manner that would defeat or leave unsatisfied the obvious purpose of the agreement. In other words it would not allow defendant to prescribe rules that would compel transferring passengers to go by a circuitous and tedious route when it could take them to their destinations by a direct route. It was not only the right of defendant but its duty to prescribe reasonable rules for the use of transfers, and it was the duty of plaintiff when he became a passenger and received the transfer check to inform himself of the manner in which it could be used. ''It is the duty of a person about to take passage to inquire when,

where and how he can go, or stop, according to the regulations, and if he makes a mistake, not induced by the agent of the company, he has no remedy.'' [Logan v. Railroad, 77 Mo. 663.]

This rule applies to street railways as does the further rule that a railway company must prescribe rules for the conduct of its highly complex business. The proper service, as well as the safety of the public, demands an intelligent and detailed systematizing of the business and passengers must comply with such rules as long as they are reasonable. Further we quote from the opinion in the Logan case:

''A railroad operated at random, without fixed rules and regulations to be observed in its management, would be a nuisance and a terror to the country through which it might pass. The probability that innumerable accidents and injuries would result from such a reckless mode of moving trains, requires the adoption and strict enforcement of reasonable regulations for their operation and management. A departure from such rules and regulations which should occasion an injury to a passenger who is presumed to take passage with reference to them, would render the company liable to such passenger in damages; and this liability cannot co-exist with the right of a passenger to have the train stop at a station at which, by the regulations of the company, such train is not permitted to stop. The court erred in refusing to permit the defendant to prove the rules and regulations of the company and the information given to plaintiff by the ticket agent when plaintiff purchased his ticket.''

It was error in the present case to refuse the offer of defendant to prove its rules showing that the transfer point at Fifth and Wyandotte streets was the only point at which passengers were allowed to transfer from the Rosedale to the Fifth street cars. But there is enough in the record to show indisputably that such

was the rule and that plaintiff had but to read the back of his transfer check to know that defendant did not purpose to carry him on that transfer by any other route than that designated. His conduct was a defiance of a reasonable rule. He selected a circuitous course that required two changes of cars when he was offered a straight course with but one change. But whether his course was direct or devious is immaterial. He was offered a direct course and that was all defendant was required to offer him. The question at issue is not whether he selected a reasonably direct route, but whether he traveled by a reasonably direct and convenient route provided by the rules of defendant. There is no pretense that he did and we hold, as a matter of law that his transfer did not entitle him to ride on the car at the place of his expulsion.

The only issue on which plaintiff may go to the jury is that greater force was used in his ejection than was required by his passive opposition. Defendant argues that the petition does not sufficiently plead a cause founded on such tort. The objection would be good on demurrer to the petition, and we suggest to counsel for plaintiff that they amend the petition to state a good cause of action.

What we have said properly disposes of the case and we shall not discuss other points argued in the briefs. The judgment is reversed and the cause remanded.

All concur.